UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 07-30094-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING |
| vs. | ) | MAGISTRATE JUDGE'S |
| | ) | REPORT AND |
| FRANK IRON HAWK | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Defendant, Frank Iron Hawk, is charged with assault resulting in serious bodily injury and child abuse in violation of 18 U.S.C. §§ 1153, 113(a)(6), and SDCL 26-10-1. Docket 1. He moves to suppress statements he made to a tribal officer and social worker on September 25, 2007. Docket 23. He also moves to suppress statements he made to a tribal detective on September 29, 2007. Docket 23.

The court referred the motion to suppress to Magistrate Judge Mark A. Moreno pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge recommends that the statements not be suppressed. Iron Hawk objects to the report and recommendation of the magistrate judge. The government has not objected to the report and recommendation.

**STANDARD OF REVIEW**

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; see also Fed. R. Civ. P. 72(b). After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court adopts the report and recommendation of the magistrate judge as detailed below.

**DISCUSSION**

**I.   September 25, 2007, Statements to Tribal Officer**

Iron Hawk disputes the magistrate judge's proposed findings that on September 25, 2007, Iron Hawk was not in custody within the meaning of Miranda, that his statements were voluntary, and that Tribal Officer Don Farlee was credible.

A.  **Factual Findings**

Iron Hawk objects to the factual findings of the magistrate judge on the ground that the magistrate judge did not include the fact that Tribal Officer Don Farlee left the emergency room waiting area at Indian Health Services (IHS) in Eagle Butte, South Dakota, to retrieve a piece of paper so that Iron Hawk could make a written statement. The court finds that after talking to Iron Hawk and taking his oral statement, Officer Farlee asked Iron Hawk if he would be willing to write a written statement as to the events surrounding the child's injuries, walked outside to his vehicle, obtained a blank form for Iron Hawk to write his statement on, and returned to the emergency room within two minutes. But as discussed below, the court finds that the fact that Officer Farlee left the emergency room for two minutes does not affect the disposition of the motion to suppress the oral and written statements given by Iron Hawk that day.

B.  **Credibility of Officer Farlee**

Iron Hawk also objects to the magistrate judge's proposed finding that Officer Farlee was credible in testifying that he did not suspect foul play when he began speaking with Iron Hawk. Iron Hawk argues that Officer Farlee admitted that he was suspicious of criminal activity or child abuse before he approached Iron Hawk because Iron Hawk was standing several feet away from the door of the room where his daughter was being treated, was not looking in

3

the direction of the room, and spoke with a shaky voice. Moreover, according to the times recorded on various documents, Officer Farlee had called the Department of Social Services to report a case of possible child abuse approximately ten minutes before asking Iron Hawk to record a written statement.

After reviewing the transcript of the suppression hearing, the court finds that Officer Farlee did not suspect that Iron Hawk had abused his daughter until he began talking with him. The fact that Officer Farlee reported a possible case of child abuse to the Department of Social Services before questioning Iron Hawk does not indicate that he suspected Iron Hawk in particular when he made the call. Officer Farlee testified that he began to suspect that Iron Hawk was involved in the child's injuries when Iron Hawk's voice began to shake and break up, he was looking at the officer rather than the trauma room, and he did not try to get into the trauma room to see his daughter. Because several of the facts that made Officer Farlee suspicious could not have arisen until he began talking to Iron Hawk, the court finds that the officer did not suspect that Iron Hawk had abused his daughter or engaged in criminal activity until after they began talking. Although Officer Farlee responded affirmatively to the magistrate judge's question of whether those facts motivated him to ask Iron Hawk what happened in the first place, the magistrate judge was in a better position to evaluate the meaning of Officer

Farlee's one-word response. The court gives deference to the magistrate judge's conclusions regarding Officer Farlee's testimony and finds that Officer Farlee's testimony is credible.[1]

### C. Legal Findings

Iron Hawk objects to the magistrate judge's recommendation that his statements to Officer Farlee did not violate Miranda and were voluntarily given. The court adopts the magistrate judge's recommendation that the statements given to Officer Farlee not be suppressed.

Miranda requires that an individual be advised of the privilege against self-incrimination and the right to the assistance of counsel prior to questioning when the suspect is being interrogated while in custody. See United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). A suspect is in custody if, considering the totality of the circumstances, " 'a reasonable person in the suspect's position would have understood his situation' to be one of custody." Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). Common indicia of custody include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether

---

[1] In any case, "the fact that the purpose of the questioning is to further focus the investigation on the defendant 'does not weigh heavily in [the] analysis.' " United States v. Griffin, 922 F.2d 1343, 1348 (8th Cir. 1990).

>   the suspect initiated contact with authorities or voluntarily
>   acquiesced to official requests to respond to questions; (4) whether
>   strong arm tactics or deceptive stratagems were employed during
>   questioning; (5) whether the atmosphere of the questioning was
>   police dominated; or, (6) whether the suspect was placed under
>   arrest at the termination of the questioning.

Id. at 1349.

Here, the magistrate judge properly found that Iron Hawk was not in custody within the meaning of Miranda when he was questioned by Officer Farlee at IHS. The only factors indicating that Iron Hawk was in custody are that Officer Farlee did not inform Iron Hawk at the outset that the questioning was voluntary and that Iron Hawk did not initiate the contact with officer Farlee. On the other hand, according to Officer Farlee's credible testimony, Iron Hawk was not handcuffed and his freedom of movement was not restrained, Officer Farlee did not employ any strong arm tactics or deceptive stratagems while talking to Iron Hawk, the atmosphere of the hospital was not police-dominated, and Officer Farlee did not place Iron Hawk under arrest after he signed the written statement. Moreover, the fact that Officer Farlee left the waiting room to retrieve a piece of paper from his vehicle, leaving Iron Hawk alone in the waiting room for two minutes, does not indicate that Iron Hawk was in custody. Rather, it strengthens the conclusion that Iron Hawk was free to leave. Based on these facts, the court adopts the magistrate judge's

recommendation that Iron Hawk was not in custody within the meaning of <u>Miranda</u> when he made oral and written statements to Officer Farlee.

Further, the magistrate judge properly found that Iron Hawk's statements to Officer Farlee were voluntary. The government bears the burden of proving by a preponderance of the evidence that a challenged statement was voluntary. <u>United States. v. LeBrun</u>, 363 F.3d 715, 724 (8th Cir. 2004). "A confession is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker.'" <u>United State v. New</u>, 491 F.3d 369, 374 (8th Cir. 2007) (quoting <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225 (1973)). An involuntary statement is one that "was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." <u>LeBrun</u>, 363 F.3d at 724. Voluntariness is judged by the totality of the circumstances, with examination into the conduct of the officers and the characteristics of the accused. <u>Id.</u> A statement has been found to be voluntary where the suspect was hospitalized in a private room, confined to his bed in a neck brace, and taking medication; where the officer informed the suspect that he did not have to talk and would not be arrested; where the officer did not use force or deceptive tactics; and where the interview lasted about twenty-five minutes. <u>New</u>, 491 F.3d at 373-74. Despite the suspect's physical helplessness in the hospital room, the

officer's "simple act of asking questions" was not sufficiently coercive conduct to render the confession involuntary. Id. at 374.

Here, Officer Farlee's conduct was not coercive. He did not exert any threats or promises to get Iron Hawk to describe what happened and did not impose violence on Iron Hawk. Iron Hawk was not under the influence of alcohol or drugs, appeared to understand Officer Farlee's questions, and was free to move about the waiting room. Like the officer in New, Officer Farlee simply asked Iron Hawk questions. Although Officer Farlee did not inform Iron Hawk that he did not have to answer the questions or that he was not under arrest, the lack of any psychologically or physically coercive tactics by Officer Farlee indicates that Iron Hawk exercised a free and unconstrained choice to talk to Officer Farlee and to write his recollection of the events of that morning. The magistrate judge correctly found that Iron Hawk's statements to Officer Farlee were voluntarily given. Accordingly, the court adopts the magistrate judge's report and recommendation that the statements to Officer Farlee not be suppressed.

**II.   September 25, 2007, Statements to Department of Social Services Worker**

Iron Hawk disputes the magistrate judge's finding that Department of Social Services family services specialist Glenn Gunville was not required by Miranda to advise Iron Hawk of his rights to remain silent and to assistance of

counsel because he was not a law enforcement officer or acting on behalf of or as an agent of a law enforcement agency.[2] The court agrees with the magistrate judge's recommendation that <u>Miranda</u> warnings were not required, but on the ground that even if Gunville was acting on behalf of a law enforcement agency, the questioning did not constitute custodial interrogation.

<u>Miranda</u> requires warnings prior to custodial interrogation "initiated by law enforcement officers." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). There is no brightline rule on whether social workers fall under the <u>Miranda</u> requirement. <u>See</u> <u>United States v. D.F.</u>, 115 F.3d 413, 420 (7th Cir. 1997) (finding that staff members of the county mental health facility acted as an arm of law enforcement); <u>State v. Bruske</u>, 288 N.W.2d 319, 322 (S.D. 1980) (finding that social worker was not required to give <u>Miranda</u> warnings). Instead of determining whether a social worker qualifies as a law enforcement officer under <u>Miranda</u>, many courts simply consider the status and power of the social worker in an analysis of whether the suspect was in custody. <u>See, e.g.</u>, <u>United States v. Moreno</u>, 36 M.J. 107, 112 (C.M.A. 1992) (concluding that social worker was not required to give <u>Miranda</u> warnings because suspect was plainly

---

[2]As the magistrate judge noted, Iron Hawk moved to suppress statements made to social worker Marie Kent-Singleton. The testimony at the suppression hearing, however, indicates that the statements were made to Glenn Gunville, and Gunville's supervisor Kent-Singleton reviewed and recorded Gunville's report of the conversation under her own name. Like the magistrate judge, the court will treat Iron Hawk's motion to suppress statements made to Kent-Singleton as a motion to suppress statements made to Gunville.

not in custody). Because the court concludes that Iron Hawk was not in custody during his conversation with Gunville, it is unnecessary to determine whether Gunville acted as an arm of a law enforcement agency.

Analyzing the facts of Gunville's conversation with Iron Hawk in light of the Griffin factors, the court finds that Iron Hawk was not in custody within the meaning of Miranda. Iron Hawk was not physically restrained in any way, and there is no indication that Gunville would have prevented him from walking away. Iron Hawk willingly told Gunville what had happened that morning. Gunville spoke in a normal tone of voice and did not threaten Iron Hawk, tell him he would take his daughter away, or make any promises to induce Iron Hawk to talk to him. Officer Farlee may have been in the emergency room waiting area during the conversation, but he was not standing close to Iron Hawk and Gunville during their conversation. There is no indication that Officer Farlee's presence in the room made the atmosphere police dominated. Iron Hawk was not arrested at the end of the conversation, nor did Gunville even have the power to arrest him. Although Gunville did not inform Iron Hawk that the questioning was voluntary before they began speaking, the other circumstances of the interview indicate that Iron Hawk was not in custody. Therefore, Gunville was not required to give Miranda warnings before talking to Iron Hawk. The court adopts the magistrate judge's

recommendation that the September 25, 2007, statements to the social worker not be suppressed.

### III.     September 29, 2007 Statements to Tribal Detective

Finally, Iron Hawk objects to the magistrate judge's finding that Iron Hawk was not in custody when he was interviewed by tribal detective Larry LeBeau and did not require Miranda warnings.[3]  The court adopts the magistrate judge's recommendation.

Application of the Griffin factors discussed above shows that Iron Hawk was not in custody during the conversation with Officer LeBeau.  The Eighth Circuit has found that a suspect was not in custody within the meaning of Miranda when agents questioned him in an unmarked police vehicle.  United States v. Bordeaux, 400 F.3d 548, 559 (8th Cir. 2005).  In Bordeaux, the agent told the suspect that his participation in the interview was voluntary, he could end the interview at any time, and he was not under arrest.  Id. at 560.  The suspect had unrestrained freedom of movement during the questioning, in that he was allowed to enter his apartment building unattended to use the restroom, he was not subjected to any strong arm or deceptive tactics, and the agents did not trick him.  Id.  The suspect stopped the interview after one hour and forty-five minutes, at which time the agents directed the suspect to

---

[3]Iron Hawk does not challenge the magistrate judge's finding that his statements to Officer LeBeau were voluntary.

produce a urine sample pursuant to a warrant providing authorization for the test. Id. at 559. Examining these facts in light of the Griffin factors, the court concluded that the suspect was not in custody. Id.; see also United States v. Johnson, 64 F.3d 1120,1126 (8th Cir. 1995) (finding that suspects were not in custody when they were questioned without handcuffs in squad cars, agreed to enter the squad cars, responded to questions, and were not formally arrested at the scene).

    Here, the magistrate judge properly found that Miranda warnings were not required before Officer LeBeau questioned Iron Hawk. Like the suspect in Bordeaux, Iron Hawk voluntarily agreed to sit in Officer LeBeau's unlocked and unmarked vehicle and was informed before the interview began that he was not under arrest and was free to leave at any time. Iron Hawk not only voluntarily responded to Officer LeBeau's questions, but he also volunteered information about the events in question before Officer LeBeau finished asking preliminary identification questions. Although Officer LeBeau asked Iron Hawk if he was really telling the truth and if he was getting angry, Officer LeBeau did not subject Iron Hawk to deceptive tactics, accuse Iron Hawk of lying, or physically threaten him. Iron Hawk was not handcuffed during the interview. Finally, Officer LeBeau's conversation with Iron Hawk lasted only ten to fifteen minutes, in contrast to the hour and a half interview approved in Bordeaux.

Iron Hawk argues that he was in custody because Officer LeBeau continued to talk to him and ask questions when he moved to open the door and leave the vehicle. The court finds that the fact that Officer LeBeau informed Iron Hawk that the investigation was ongoing, asked that he submit to a polygraph test at a later time, and asked for Iron Hawk's contact information after Iron Hawk began to open the vehicle door does not render the questioning custodial. In Johnson, where the interrogation was found to be noncustodial, the suspect asked if he was free to leave after a few minutes of questioning, and officers told him he was not. 64 F.3d at 1123-24, 1126. Officer LeBeau did not inform Iron Hawk that he was not free to leave. Rather, he merely provided information and asked questions in order to wrap up the interview. See also Bordeaux, 400 F.3d at 559 (finding no custody where suspect was subjected to a urine test pursuant to a warrant after he indicated he would answer no more questions without an attorney). The fact that Officer LeBeau briefly continued to talk to Iron Hawk after he first reached for the car door does not overcome the factors indicating that the interview was noncustodial.

Because the conversation between Officer LeBeau and Iron Hawk did not take place in custody within the meaning of Miranda, the court adopts the magistrate judge's recommendation that the statements should not be suppressed.

Based on the foregoing, it is hereby

ORDERED that the court adopts the Bench Decision/Report and Recommendation of Magistrate Judge Mark A. Moreno (Dockets 66, 68) as supplemented herein and, therefore, defendant's motion to suppress (Docket 23) is denied.

Dated August 20, 2008.

>BY THE COURT:
>
>/s/ *Karen E. Schreier*
>KAREN E. SCHREIER
>CHIEF JUDGE